UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| STEVEN L. WOLDT, | CASE NO.: 5:10CV357 |
| Plaintiff, | |
| | MAGISTRATE JUDGE |
| | GEORGE J. LIMBERT |
| v. | |
| | |
| MICHAEL J. ASTRUE, | **MEMORANDUM OPINION & ORDER** |
| Commissioner of Social Security, | |
| Defendant. | |

Steven L. Woldt ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue ("Defendant"), Commissioner of the Social Security Administration ("SSA"), denying his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income benefits ("SSI"). ECF Dkt. #1. For the following reasons, the Court REVERSES the Commissioner's decision and remands the instant case for further proceedings:

**I.     PROCEDURAL HISTORY**

On August 18, 2006, Plaintiff filed applications for DIB and SSI alleging disability beginning July 31, 2005. Tr. at 72-74. The SSA denied Plaintiff's claims initially and on reconsideration. *Id*. at 56-62. Plaintiff filed a request for hearing before an administrative law judge ("ALJ") and on February 23, 2009, an ALJ conducted a hearing where he received testimony from Plaintiff and Ted Macy, a vocational expert. Tr. at 51. Plaintiff was represented by counsel. *Id*.

On June 29, 2009, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled under the Social Security Act. Tr. at 14-27. Plaintiff requested review of the ALJ's decision by the Appeals Council, but the Appeals Council denied his request for review. *Id*. at 2-9. On February 17, 2010, Plaintiff filed the instant suit. ECF Dkt. #1. On April 22, 2010, the parties consented to the jurisdiction of the undersigned. ECF Dkt. #11.

On July 27, 2010, Plaintiff filed a brief on the merits and filed a motion to remand the instant case to the Commissioner of Social Security pursuant to either sentence four or sentence six of 42 U.S.C. § 405(g).  ECF Dkt. #s 17, 18.  On October 14, 2010, Defendant filed a brief on the merits and a response to Plaintiff's motion for a remand.  ECF Dkt. #s 21, 22.  On November 12, 2010, Plaintiff filed a reply.  ECF Dkt. #24.

## II. **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

At the hearing, Plaintiff amended his onset date to May 1, 2003.  Tr. at 14.  The ALJ determined that Plaintiff suffered from degenerative disc disease ("DDD"), depression and post-traumatic stress disorder ("PTSD"), which qualified as severe impairments under 20 C.F.R. §§ 404.1520(c) and 416.920(c).  *Id.* at 16.  The ALJ next determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *Id*. at 17.

The ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work, with the ability to change positions for a minute or two every hour.  Tr. at 18.  The ALJ further limited Plaintiff to simple, routine tasks that could be performed independently which did not require depth perception, more than superficial interaction with coworkers, supervisors and the general public, or rigorous production pace or strict production quotas.  *Id.*  The ALJ determined that Plaintiff could not perform his past relevant work.  *Id*. at 26.

Based on the vocational expert's testimony, the ALJ determined that Plaintiff had the RFC to work in jobs existing in significant numbers in the national economy, such as a bench assembler, wire worker, and final assembler. Tr. at 27.

## III. **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI.  These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

> 3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));
>
> 4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));
>
> 5. If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 528 (6th Cir.1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532. Substantiality is based upon the record taken as a whole. *Houston v. Sec'y of Health & uman Servs.*, 736 F.2d 365 (6th Cir. 1984).

## V.     ANALYSIS
### A.     TREATING PHYSICIAN RULE
#### 1.     DR. FREEDMAN'S OPINIONS

Plaintiff first asserts that the ALJ violated the treating physician rule when he disregarded the opinions of Dr. Freedman, Plaintiff's treating psychologist. ECF Dkt. #17 at 9-14.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security. An ALJ must give controlling weight to the opinion of a treating physician if the ALJ finds that the opinion on the nature and severity of an impairment is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record." 20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2). If an ALJ does not give controlling weight to the opinions of a treating physician, the ALJ must apply the factors in 20 C.F.R. § 404.527(d)(2)(i), (d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2)(i),(d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so. SSR 96-2p. The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This allows a claimant to understand how his case is determined, especially when he knows that his treating physician has deemed him disabled and he may therefore " 'be bewildered when told by an administrative bureaucracy that he is not, unless some reason for the agency's decision is supplied.' " *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004), quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2nd Cir.1999). Further, it

"ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.* If an ALJ fails to explain why he rejected or discounted the opinions and how those reasons affected the weight accorded the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 243 (6th Cir. 2007), citing *Wilson*, 378 F.3d at 544.

Dr. Freedman provided numerous opinions as to Plaintiff's mental health conditions and prognosis. On February 10, 2009, Dr. Freedman provided a psychological report to the Bureau of Disability Determination. Tr. at 252. Dr. Freedman presented Plaintiff's background, indicating that Plaintiff had been treating with him once per week for one hour off and on from March 14, 2005 through the time of the report, depending upon when Plaintiff had transportation to the sessions. *Id.* Dr. Freedman noted that Plaintiff often had difficulty keeping his appointments. *Id*. Dr. Freedman explained that Plaintiff sought his services because Plaintiff suffered pain management issues from a back injury suffered when he was attacked by drug dealers while working for the local drug taskforce. *Id*. Dr. Freedom related that Plaintiff had also suffered facial injuries in which he lost his chin and lower lip from a dog attack and Plaintiff was in an automobile accident where he nearly lost his left eye. *Id*. Dr. Freedman indicated that Plaintiff suffered from chronic and severe pain in his back, pain from plastic surgery to replace his chin and lower lip, and pain from having a steel plate inserted below his left eye to retain the structure of his eye socket. *Id*.

Dr. Freedman further explained that Plaintiff suffered childhood trauma that seriously affected his development when he watched his mother battle breast cancer, then bone cancer, and become disfigured and eventually die when he was nine years old. Tr. at 252. Dr. Freedman conveyed that Plaintiff joined the United States Marines when he was 17 ½ years old and was less than honorably discharged, but obtained his high school equivalency diploma thereafter. *Id.*

Dr. Freedman found Plaintiff alert and oriented, moody and easily upset, with loud verbal presentation at times, while at other times non-contextual and out of awareness. Tr. at 253. Dr. Freedman found Plaintiff's thought content to be agitated and distractible, with hypochondriacal thinking and over-identification with negative and dysfunctional processes. *Id*. Dr. Freedman

reported that Plaintiff had above average intelligence and intact cognitive functioning, but poor concentration and interest maintenance. *Id.*

Based upon MMPI testing administered on December 21, 2008, Dr. Freedman diagnosed Plaintiff with dysthymic disorder, PTSD, generalized anxiety disorder, and antisocial personality disorder. Tr. at 253. He rated Plaintiff's GAF at 51, indicating a moderate impairment in functioning. *Id*.

Dr. Freedman assessed Plaintiff's most serious mental impairment as his antisocial personality disorder with bipolar, dependent, narcissistic and avoidant characteristics. Tr. at 254. Dr. Freedman concluded that these disorders impact Plaintiff's mood and affect, which are also impacted by the dysthymic disorder. *Id*. Dr. Freedman indicated that Plaintiff's dysfunctional lifestyle was directly related to the untimely death of his mother. *Id.* He noted that Plaintiff was convicted of felonious assault after having a fit of rage against his ex-fiancee who was a drug addict and sentenced to prison for drugs. *Id*. Plaintiff apparently threw an ashtray at his ex-fiancee after she came home in a drugged state and stated that the men that she went out with had raped her. *Id*. at 255. Plaintiff received a five-year prison sentence with probation and restitution. *Id*.

As to Plaintiff's restriction of daily activities, Dr. Freedman found that Plaintiff was restricted due to his chronic pain, depression, anxiety and challenges from his personality disorder. Tr. at 255. Intellectually, Dr. Freedman found that Plaintiff had no limitations, although he did have difficulty concentrating on and completing tasks and had a low tolerance for frustration which often rendered him confused and disoriented. *Id.* Dr. Freedman concluded that Plaintiff's impairments affect his behavior in negative ways, leading to him becoming belligerent, explosive, hostile, and out of control at times. *Id.* As to social interactions, Dr. Freedman indicated that on the surface, Plaintiff had limited social skills in which to relate capably with the public, coworkers and supervisors as shown by his limited work history. *Id*. Dr. Freedman noted that Plaintiff had a difficult relationship with his father, a psychologist, as his father was Plaintiff's sole means of financial support for the last five years. *Id*. Plaintiff also reported strained relationships with his two brothers, an impossible relationship with his stepmother, a divorce, and an abusive relationship with his ex-fiancee. *Id.* at 256.

Dr. Freedman reported that Plaintiff suffered frequent and severe episodes of decomposition, sometimes daily. Tr. at 256. He also indicated that the severity varies from Plaintiff calling his father for assistance to taking him to the emergency room for treatment. *Id*. Dr. Freedman explained that many of Plaintiff's hospitalizations had been the result of Plaintiff's poor decision-making in social relations and many were precipitated by emotional and psychological conditions. *Id*. However, some of the hospitalizations have been due to physiological conditions, such as a possible stroke that Plaintiff experienced on his 44th birthday and the lengthy hospital stay that Plaintiff had when he was attacked by drug dealers and left for dead. *Id.*

Dr. Freedman indicated that Plaintiff was compliant with his medications, which included morphine sulphate, extended release of 60 milligrams twice daily, morphine sulphate instant release of 15 milligrams every four to six hours, lyrica twice a day, flexeril of 10 milligrams three times daily, phenegrin of 25 milligrams every four to six hours, allegra D twice per day, and flonaze, 2 puffs daily. Tr. at 257. He further concluded that Plaintiff had extreme difficulty in tolerating personal stressors and even though Dr. Freedman did not know how Plaintiff would tolerate work stressors, he believed that they would result in explosive behavior with coworkers, supervisors and bosses. *Id.* Dr. Freedman also indicated that Plaintiff had limitations in managing money and thus Plaintiff's father should be involved in helping him manage any benefits due him. *Id.* Dr. Freedman noted however, that Plaintiff would resent his father's involvement and a neutral third-party may be necessary to help Plaintiff manage any benefits. *Id*.

On February 18, 2009, Dr. Freedman completed a "Medical Statement Concerning Depression with Anxiety, OCD, PTSD or Panic Disorder" form regarding Plaintiff's conditions from March 31, 2008 through the present time. Tr. at 250. Dr. Freedman checked the signs and symptoms that Plaintiff suffered from, including pervasive loss of interest in all activities, sleep disturbance, decreased energy, apprehensive expectation, feelings of guilt or worthlessness, generalized persistent anxiety, vigilance and scanning, and recurrent and intrusive recollections of a traumatic experience. *Id.* He concluded that Plaintiff's activities of daily living and difficulty in maintaining social functioning were extreme, and Plaintiff had: deficiencies in concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner; repeated

episodes of deterioration or decompensation in work or a work-like setting which caused Plaintiff to withdraw from the situation or experience exacerbation of signs and symptoms; and a complete inability to function independently outside the area of his home due to panic attacks.  *Id.*

Dr. Freedman also indicated that Plaintiff was extremely impaired in the following abilities: maintaining attention and concentration for extended periods; performing activities within a reasonable schedule; maintaining regular attendance and being punctual within customary tolerances; maintaining an ordinary routine without special supervision; working in coordination with and in proximity with others without being distracted by them; making simple work-related decisions; completing a normal workday and workweek without interruption from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; interacting appropriately with the general public; responding appropriately to changes in the work setting; traveling in unfamiliar places or using public transportation; and in setting realistic goals or making plans independent of others.  Tr. at 251.  Dr. Freedman commented that although he was punctual, Plaintiff could not follow through with tasks.  *Id*.  He also commented that he could not evaluate Plaintiff's "work-related" abilities presented in the checklist of abilities from first-hand observation and the evaluation of these abilities was based upon Plaintiff's self-report and the report of Plaintiff's father.  *Id.* Dr. Freedman concluded that Plaintiff was not functioning normally, he had mood swings, thought anti-socially, and could not concentrate or complete tasks.  *Id.*

On February 20, 2009, Dr. Freedman completed a questionnaire form checking the symptoms listed on the questionnaire that he observed Plaintiff exhibit, including loss of interest in almost all activities, apprehensive expectations, feeling of guilt or worthlessness, difficulty concentrating, hallucinations or paranoid thinking, generalized anxiety, appetite and sleep disturbances, decreased energy, thoughts of suicide, motor tension, and hyperactivity.  Tr. at 233.  He also indicated that Plaintiff had irrational fears of objects, activities or situations, recurrent panic attacks, recurrent obsessions or compulsions, and recurrent and intrusive recollections of a traumatic experience.  *Id.* Dr. Freedman further indicated that Plaintiff's daily living activities were extremely restricted due to his mental issues, and he was mildly limited in maintaining social functioning and interacting

-8-

appropriately with the general public.  *Id*. at 234.  Dr. Freedman also checked both "yes" and "no" as to the question of whether he believed that Plaintiff could function independently outside of his home due to panic attacks.  *Id.*  He explained that Plaintiff's father had informed him that Plaintiff suffered from panic attacks.  *Id.*

On February 20, 2009, Dr. Freedman also completed a "Diagnosis of Mental Impairments" form for Attention Deficient Hyperactivity Disorder in which he found that Plaintiff had marked inattention, impulsiveness and hyperactivity from age 3 to age 18.  Tr. at 237-238.

The ALJ reviewed each of Dr. Freedman's opinions and gave them "little weight."  Tr. at 23.  He reasoned that no treatment notes existed in the record from Dr. Freedman and he therefore could not find "that objective evidence or progress notes support Dr. Freedman's opinions as there are no such records to form an evidentiary foundation for his opinion."  *Id*. at 23-24.  The ALJ offered additional reasons for attributing "little weight" to Dr. Freedman's opinions and gave more weight to the opinions of agency examining psychologist Dr. Sipps than to those of Dr. Freedman.  *Id*.

Before rendering any determination as to Dr. Freedman's opinions, the ALJ was required to apply the first prong of the treating physician rule, that is, to review the opinions and determine whether "the opinion on the nature and severity of an impairment is well supported by medically acceptable clinical and laboratory diagnostic techniques."  20 C.F.R. §§ 404.1527(d)(2); 416.927(d)(2).  In order to do so, the ALJ must have adequate evidence from the treating psychologist.  Here, the ALJ stated that he lacked such evidence in the record.  Tr. at 23.  In doing so, the ALJ failed to follow the agency's own regulations with respect to obtaining medical records if he believed that such documents were lacking in order to make a determination.  Sections 404.1512(e) and 416.912(e) of Title 20 of the Code of Federal Regulations provide that:

> (e) Recontacting medical sources. When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> > (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your

-9-

> medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques. We may do this by requesting copies of your medical source's records, a new report, or a more detailed report from your medical source, including your treating source, or by telephoning your medical source. In every instance where medical evidence is obtained over the telephone, the telephone report will be sent to the source for review, signature and return.
>
> (2) We may not seek additional evidence or clarification from a medical source when we know from past experience that the source either cannot or will not provide the necessary findings.

20 C.F.R. § 404.1512(e)(1); 20 C.F.R. § 416.912(e)(1).

While the ALJ relied upon other evidence in the record for attributing "little weight" to Dr. Freedman's opinions, the rule for recontacting a medical source does not state that an ALJ may disregard recontacting a treating physician when evidence from sources besides the treating physician is adequate to overcome the treating physician's opinions. The regulation states that "[w]hen the evidence we receive *from your treating physician or psychologist* or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision." 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1). Here, the ALJ specifically found Dr. Freedman's opinions lacking support due to a lack of treatment notes and evidence from him in the record before the ALJ. The ALJ did not state that records from Dr. Freedman do not exist. Rather, he stated that they are not in the record before him and he therefore could not find evidence to support Dr. Freedman's opinions. Tr. at 23-24. He therefore was obligated to recontact Dr. Freedman in order to obtain such records, if such records exist.

At least one court in this Circuit has addressed the ALJ's obligation to recontact a medical source. In *Prater v. Astrue*, No. 08-177-GWU, 2009 WL 2589526, at *6 ( E.D. Ky. Aug. 19, 2009), the United States District Court for the Eastern District of Kentucky relied upon the Sixth Circuit's holding in *Littlepage v. Chater*, No. 96-6618, 1998 WL 24999 (6th Cir. January 14, 1998), unpublished, to find that an ALJ was not obligated to recontact a treating physician where the record failed to suggest that the record was incomplete or that the physician based his opinion on records not before the ALJ. The *Prater* Court noted that Sixth Circuit caselaw on the issue of recontacting a medical source was "very sparse." *Id.* In *Littlepage*, the Sixth Court determined that the ALJ's

-10-

duty to recontact a treating source was not triggered when all of the treatment notes and information upon which the doctor based his opinion were in the record.  1998 WL 24999, at *3.

The instant case presents the converse of the holdings in *Littlepage* and *Prater*.  The record in this case contains no treatment notes from Dr. Freedman, Plaintiff's treating psychologist for five years.[1]  The ALJ acknowledged the incomplete record and used the lack of treatment notes to find no support for Dr. Freedman's opinions, although he still attributed "little weight" to the opinions. Tr. at 24.  Thus, the ALJ was obligated to recontact Dr. Freedman in order to obtain his treatment notes.

The Social Security Regulations provide additional support for obtaining records from a treating source.  Listing 12.00(d)(1) of the Introduction to the Listings for Mental Disorders provides that "[w]e will make every reasonable effort to obtain all relevant and available medical evidence about your mental impairment(s), including its history, and any records of mental status examinations, psychological testing, and hospitalizations and treatment.").  20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00(d)(1).  Section 404.1512(d) of Title 20 of the Code of Federal Regulations also provides that the SSA has the responsibility to develop a claimant's complete medical history for at least the 12 months preceding the month in which a claimant files his application.  20 C.F.R. § 404.1512(d).

For these reasons, the Court REMANDS the instant case for the ALJ to recontact Dr. Freedman in order to obtain his treatment notes and redetermine the weight, if any, to give to Dr. Freedman's opinions that are already in the record.  The Court is aware that Plaintiff mentioned in his reply that Dr. Freedman "did not keep or provide treatment notes for pro bono treatment he provided."  ECF Dkt. #24.  However, the Court is unsure whether Plaintiff is acknowledging that no treatment notes exist or whether they were just not provided by Dr. Freedman.  Accordingly, this case is remanded so that this issue can be resolved.

If treatment notes do not exist and the ALJ decides again to give Dr. Freedman's opinions less than controlling weight, he nevertheless must apply the factors in 20 C.F.R. § 404.527(d)(2)(i),

---

[1]  Neither party appears to dispute that Dr. Freedman is a treating psychologist.

-11-

(d)(2)(ii), (d)(3) through (d)(6) [20 C.F.R. § 416.927(d)(2)(i),(d)(2)(ii), (d)(3) through (d)(6) for SSI] which include the length of the treatment relationship, the frequency of the examinations, the nature and extent of the treatment relationship, the supportability of the opinions with medical signs, laboratory findings, and detailed explanations, consistency of the opinions with the record as a whole, the specialty of the treating physician, and other factors such as the physician's understanding of social security disability programs, and familiarity of the physician with other information in the claimant's case record.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  It does not appear that the ALJ considered these factors when he reviewed Dr. Freedman's opinions.  The ALJ must also provide more than conclusory statements that Dr. Freedman's opinions are inconsistent with the other evidence of record.  SSR 96-2p.

The ALJ should also be mindful of his findings with regard to Plaintiff's failure to consistently pursue mental health treatment.  The Sixth Circuit has found that "[i]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."  *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).  The reconsideration of Dr. Freedman's opinions in relation to any treatment notes or other evidence from Dr. Freedman may also impact the weight given to the opinions of the other mental health sources that examined Plaintiff or reviewed his records.  Accordingly, the ALJ should reexamine his findings as to these sources and more clearly articulate the weight that he has given to each.

### **2**.      **DR. BRASHEAR**

Plaintiff also contends that the ALJ violated the treating physician rule by dismissing other relevant treating physician evidence.  ECF Dkt. #17 at 14.  Plaintiff cites to the opinions of licensed pain management specialist Dr. Brashear and state agency examiner Dr. Anaya.  *Id*.

Dr. Brashear indicated in her February 28, 2009 medical source statement that she was Plaintiff's primary care physician since April 2008, seeing him on a monthly or more basis.  Tr. at 240-241.  She stated that Plaintiff reported constant pain and she observed that his pain was worse with standing, prolonged sitting, walking and bending.  *Id.* at 240.  She found no evidence of untruthfulness with regard to Plaintiff in reporting his pain and she indicated that he used medications, a cane, and rested, laid down, sat down, and changed positions in order to help relieve

-12-

his pain. *Id*. at 241. She stated that she prescribed medications and was attempting to get Plaintiff into a pain management clinic in order to help him with his pain. *Id*.

Again, as with Dr. Freedman, no treatment notes are before the ALJ with respect to this treating physician. The ALJ noted that Dr. Brashear was a treating physician, noted her findings that Plaintiff was in constant pain which was exacerbated by standing, prolonged sitting, walking and bending, and then merely stated that Dr. Brashear offered no specific functional limitations. Tr. at 24. The ALJ does not articulate the weight given to the opinion of Dr. Brashear, if any, and does not explain the reason for any weight given to that opinion.

Accordingly, the Court REMANDS this case in order for the ALJ to recontact Dr. Brashear so that her treatment notes, if any, may be obtained. And again, upon remand, the ALJ must articulate the weight that he decides to give to Dr. Brashear's opinion and if he decides to give it less than controlling weight, he must consider the factors in 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2).

### **3**.    **DR. ANAYA**

Plaintiff also asserts in conjunction with the ALJ's violation of the treating physician rule as to Dr. Brashear's opinion that the ALJ erroneously relied upon parts of Dr. Anaya's consultative opinion. ECF Dkt. #17 at 14-15. Dr. Brashear had indicated that Plaintiff's pain was exacerbated by standing, prolonged sitting, walking and bending. Tr. at 240-241. The ALJ noted Dr. Brashear's statement and also indicated that Dr. Anaya, a consultative examiner, saw Plaintiff on March 15, 2005 and found full range of motion, normal strength in all extremities, no evidence of joint abnormality, and a normal neurological examination. *Id*. at 19. The ALJ thereafter stated that Dr. Anaya indicated that Plaintiff would not have difficulty sitting, standing, walking, lifting or handling objects up to thirty pounds. *Id*. at 22. The ALJ stated: "I give weight to these opinions and incorporated them into the findings contained within because they are consistent with and supported by the evidence." *Id*. Yet, the ALJ immediately thereafter contrarily states: "I did not exactly accept Dr. Anaya's opinions on sitting and standing because I had evidence before me at the hearing level that he did not have at the time he conducted his examination." *Id*.

Since the treatment of Dr. Brashear's medical source statement may be impacted by the

-13-

ALJ's reconsideration and further explanation under the treating physician rule, Dr. Anaya's opinion may also be impacted. The other evidence cited by Plaintiff in his brief that the ALJ failed to address should also be reconsidered, since there is no indication that the ALJ considered it in the first place. *See* ECF Dkt. #17 at 14-15. The Court reminds the ALJ that he cannot selectively include only those portions of reports that show a claimant in a "capable light" and exclude the portions of the reports that present Plaintiff in a "less than capable light" because it suggests the ALJ has only considered part of the report in formulating his conclusion. *Burgoyne v. Comm'r of Soc. Sec.* No. 09-11056, 2010 WL 955884, at *2 (E.D. Mich. Mar. 15, 2010), citing *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240-241 (6th Cir. 2002); *Hopkins v. Comm'r of Soc. Sec.,* No. 1:07CV964, 2009 WL 136022, at *14 (S.D. Ohio May 14, 2009); and *Fanning v. Shalala*, No. 5:93CV156, 1994 WL 706653 at *7 (W.D.Mich.1994), unpublished. Accordingly, the ALJ should reconsider both opinions, as well as the favorable evidence cited by Plaintiff in his brief. ECF Dkt. #17 at 14-15.

### B. **PAIN ANALYSIS/THIRD PARTY STATEMENTS**

Plaintiff also asserts that the ALJ improperly dismissed Plaintiff's statements about his pain contrary to the Social Security Regulations and Sixth Circuit caselaw. ECF Dkt. #17 at 16. He contends that the ALJ wrongfully relied upon evidence of Plaintiff's medication and treatment noncompliance, lumped evidence of Plaintiff's participation in a handful of socially-acceptable activities over a seven-year time period to find no restriction in social interactions, and refused to give credence to any of Plaintiff's third-party statements regarding his pain. *Id.* at 16-18.

Generally, an ALJ's credibility assessment can be disturbed only for a "compelling reason." *Sims v. Commissioner of Social Sec.*, No. 09-5773, 2011 WL 180789 at *4 (6th Cir. Jan. 19, 2011), slip op. citing *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390(6th Cir. 2004). Nevertheless, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters v. Commissioner of Social Sec.,* 127 F.3d 525, 530 (6th Cir. 1997).

The social security regulations establish a two-step process for evaluating pain. *See* 20 C.F.R. § 404.1529 , SSR 96-7p. In order for pain or other subjective complaints to be considered

-14-

disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain. *See id.; Stanley v. Secretary of Health and Human Services*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky v. Bowen*, 35 F.3d 1027, 1038-1039 (6th Cir. 1994); *Duncan v. Secretary of Health and Human Services*, 801 F.2d 847, 853 (6th Cir. 1986). Therefore, the ALJ must first consider whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the individual's pain or other symptoms. *See id.* Second, after an underlying physical or mental impairment is found to exist that could reasonably be expected to produce the claimant's pain or symptoms, the ALJ then determines the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which the symptoms limit the claimant's ability to do basic work activities. *See id.*

When a disability determination that would be fully favorable to the plaintiff cannot be made solely on the basis of the objective medical evidence, an ALJ must analyze the credibility of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in Social Security Ruling 96-7p. *See* SSR 96-7p, 61 Fed. Reg. 34483, 34484-34485 (1990). These factors include: the claimant's daily activities; the location, duration, frequency and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any pain medication; any treatment, other than medication, that the claimant receives or has received to relieve the pain; and the opinions and statements of the claimant's doctors. *Felisky*, 35 F.3d at 1039-40. Since the ALJ has the opportunity to observe the claimant in person, a court reviewing the ALJ's conclusion about the claimant's credibility should accord great deference to that determination. *See Casey*, 987 F.2d at 1234. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence. *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

In this case, the first prong is satisfied because the ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. Tr. at 19. Therefore, the remaining question concerns the ALJ's credibility determination relating to

Plaintiff's complaints of pain:

> I find that Mr. Woldt's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, his statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

*Id.*

Since proper application of the treating physician rule may impact the credibility analysis, the Court remands this case for a redetermination of Plaintiff's credibility and pain allegations. Moreover, the Court notes that while the ALJ need not address every piece of evidence in the record, the ALJ fails to address any of the objective medical evidence tending to favor a finding that Plaintiff's pain could be as intense, persistent and limiting as he states. Again, the Sixth Circuit has held that an ALJ commits error in selectively including only portions of reports that show a claimant in a "capable light" but excludes the portions of the reports that present Plaintiff in a "less than capable light" because it suggests the ALJ has only considered part of the report in formulating his conclusion. *Burgoyne,* 2010 WL 955884, at *2, citing *Howard*, 276 F.3d at 240-241 *Hopkins*, 2009 WL 136022, at *14 and *Fanning v. Shalala*, 1994 WL 706653 at *7. A November 19, 2007 view of the lumbar spine showed severe disc space narrowing at L5-S1 with anterior spondylosis at L4 and L5, with a diagnosis of marked degenerative disc disease at L4-L5. Tr. at 511. A February 4, 2008 MRI of the lumbar spine revealed lower lumbosacral degenerative changes with severe bilateral forminal narrowing at L5-S1. *Id.* at 508. The record also contains reports by Plaintiff that he has attended a pain management clinic, reported having constant pain, and received trigger point injections in his back. *Id*. at 271-306. He also had a titanium plate implanted into the left side of his face following a motor vehicle accident in 2006 in which he fractured the left orbital floor and left nasal bone. *Id.* at 263, 718. Before insertion of the plate, Plaintiff complained of continuing pain in September 2006. *Id.* at 763. Plaintiff treated with an otolaryngologist who started him on prednisone to reduce the swelling around his seventh nerve. *Id.* at 760. Surgery on his orbital floor was delayed due to the swelling and prednisone side effects. *Id.* On October 25, 2006, Plaintiff complained of pain following the surgery as well as blurriness and diplopia. *Id*. at 756. Plaintiff presented to the emergency room in February 2008 with a left facial droop and left lower extremity

-16-

weakness and a stroke was suspected, but ruled out. *Id.* at 470-471. Plaintiff indicated at the February 23, 2009 hearing before the ALJ that he was receiving treatment for a facial infection from the surgery to repair his orbital bone, perhaps suggesting continuing pain and limitation resulting therefrom. *Id.* at 1073.

Further, the ALJ appears to give no consideration as to whether and to what extent Plaintiff's mental health condition impacted his capacity to seek treatment regularly or to comply with treatment and medications. *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation."). This must be analyzed in conjunction with the fact that the failure to seek treatment for a period of time may be a factor to be considered against a claimant, *Hale v. Sec'y of Health and Human. Servs.*, 816 F.2d 1078, 1082 (6th Cir.1987), unless a claimant cannot afford to treatment or medication. *McKnight v. Sullivan*, 927 F.2d 241, 242 (6th Cir.1990).

The Court also notes that the ALJ should properly address the side effects of Plaintiff's numerous medications as required under SSR 96-7p. The ALJ did mention the issue, indicating that Plaintiff initially denied side effects and then later alleged fatigue and dizziness as side effects. Tr. at 20. The ALJ then stated that he was going to find that alleged side effects would cause no more than minimal limitations to work since it was impossible to determine from the record whether Plaintiff's complaints of side effects were legitimate. *Id.* The Court finds this analysis to be insufficient. The record shows that Plaintiff took heavy narcotics frequently, including a fentanyl patch that was eventually replaced with morphine sulfate every four hours, and flexeril. *Id.* at 101, 257. The Court acknowledges that there is also evidence in the record with regard to Plaintiff's drug-seeking behavior. *Id.* at 449. The ALJ should address these issues more thoroughly in his credibility analysis.

The ALJ addressed the third-party statements from Plaintiff's friend and girlfriend in the record, although two of his three reasons for giving the statements little weight are improper. Contrary to Plaintiff's assertion, the ALJ did not refuse to give credence to the third-party statements. He referred to each statement, citing some of the relevant information in each, indicated that he considered them and gave them little weight. Tr. at 24-25. However, the ALJ indicated that

-17-

he gave the statements little weight because the individuals who gave the statements were not doctors and their statements were not consistent with Plaintiff's failure to consistently seek mental health treatment. *Id*. at 25. Neither of these reasons justify the ALJ's determination as to the weight to give the statements. Sections 404.1513(d) and 416.913(d) of Title 20 of the Code of Federal Regulations provide that other sources may provide evidence to show the severity of a claimant's impairment and how it impacts a claimant's ability to work. 20 C.F.R. §§ 404.1513(d) and 416.913(d). "Other sources" include non-medical sources such as spouses, parents, other care-givers, siblings, relatives, friends, neighbors and clergy. *Id*. Accordingly, the ALJ erred in finding that he could give only little weight to the statements made by Plaintiff's friend and girlfriend because they were not doctors. The ALJ also erred in finding that Plaintiff's failure to consistently seek mental health treatment was a reason for attributing little weight to the third-party statements of Plaintiff's friend, his girlfriend and Plaintiff's father. As indicated above, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Blankenship*, 874 F.2d at 1124.

The other reason cited by the ALJ, Plaintiff's post-onset work activity, does constitute substantial evidence to support the weight that he gave to any of the third-party statements, at least through 2005. Tr. at 25. SSR 06-3p provides that an ALJ should consider evidence from non-medical sources who have not seen a claimant in a professional capacity such as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that support or refute the evidence. SSR 06-3p. As pointed out by the ALJ, Plaintiff stated that he engaged in post-onset date work activities that were inconsistent with the third-party statements. *Id*. at 21, 25. Plaintiff reported on his SSA form that he worked at various jobs after his alleged onset date, including part-time self-employment from June 1990 through August 2005 as a contractor specializing in designing and building decks, full time employment for one month in the summer of 2007 as a general laborer mowing grass, repairing the fairways and greens keeping at a golf club, and for another month in the summer of 2007 as a construction laborer. *Id.* at 107-108. Plaintiff's reports of working for two weeks in 2006 and a month or two during 2007 do not suffice, however, for discrediting the third-party statements beyond 2005. Tr. at 107-108. Nor does

Plaintiff's reported activities. The ALJ cites to Exhibit 50F to show that Plaintiff traveled for one month. Tr. at 20. However, Exhibit 50F before the Court is a December 13, 2004 office notation from the Cleveland Clinic Foundation Pain Management Department indicating that Plaintiff reported his pain as an 8 on a 10-point scale, and reported both facial and back pain occurring constantly and over the last two years. *Id*. at 987. It also indicated that Plaintiff was compliant with his medications and that the prescriptions were refilled because Plaintiff would be traveling at the end of December. *Id*. The ALJ also cites to a March 29, 2004 behavioral management evaluation from a pain management clinic at Hillcrest Hospital in which Plaintiff reported that he had to give up riding a bike, hiking, water skiing and motorcycle riding, but he could spend time with his girlfriend and her son, go to church, fish, go boating if the water was not too rough and perform outreach work. *Id*. at 848. These statements do not equate to a finding that Plaintiff can perform daily household chores or that he could work eight hours a day everyday. "Disability does not mean that a claimant must vegetate in a dark room excluded from all forms of human and social activity." *Smith v. Califano*, 637 F.2d 968, 971 (3rd Cir. 1981). Sporadic or transitory activity does not disprove disability. *Id*.

Upon remand, the ALJ should reevaluate these third-party statements as to the weight to give them based upon evidence in the record after 2005.

As to the third-party statements offered by Dr. Freedman and Dr. Woldt, Plaintiff's father, the Court also finds inadequacies. Dr. Freedman's third-party statements with regard to Plaintiff's pain did not appear to be given in his capacity as a psychologist, but rather as an active observer of Plaintiff and his physical problems. Tr. at 98-99. While the ALJ was correct that less weight would be given to Dr. Freedman's third-party statement with regard to Plaintiff's physical limitations resulting from physical conditions, it is incorrect to apply less weight to Dr. Freedman's statement as an observer of Plaintiff's physical limitations. Moreover, Dr. Woldt's opinions would suggest a bias, since the ALJ observed that he was Plaintiff's sole financial support and Plaintiff's father. Tr. at 25. However, as with the other third-party statements, the ALJ's use of Plaintiff's reports of his daily living activities and his post-onset date activities are insufficient reasons to attribute little weight to his opinion. Accordingly, the Court remands this case for reevaluation by the ALJ of all

-19-

of the third-party statements.

### C. RFC AND SOCIAL INTERACTION

Plaintiff also asserts that the ALJ erroneously evaluated his RFC and social interaction skills. ECF Dkt. #17 at 18. The Court will not address this assertion of error as RFC and Plaintiff's social interaction skills may be reevaluated in light of the remand ordered in this case on other issues.

## VI. PLAINTIFF'S MOTION TO REMAND (ECF DKT. #18)

On July 27, 2010, Plaintiff also filed a motion to remand his case pursuant to sentence four or sentence six of 42 U.S.C. § 405(g). ECF Dkt. #18. Defendant filed opposition to the motion on October 14, 2010. ECF Dkt. #22.

Since the Court is remanding this case for the reasons stated above, the Court DENIES Plaintiff's motion to remand as MOOT. ECF Dkt. #18.

## VII. CONCLUSION

For the foregoing reasons, the Court REVERSES the ALJ's decision and REMANDS the instant case to the administrative law judge for further proceedings consistent with this Memorandum Opinion and Order

DATE: May 11, 2011

                                             */s/George J. Limbert*
                                             GEORGE J. LIMBERT
                                             UNITED STATES MAGISTRATE JUDGE